W<sup>m</sup> Breck Seiniger, Jr. (ISB#2387)
SEINIGER LAW
942 Myrtle Street
Boise, Idaho 83702
Voice: (208) 345-1000
Fax: (208) 345-4700
WBS@SeinigerLaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **ALICE KIPP,** | **CASE NO.**  1:18-cv-245 |
| *Plaintiff,* | |
| **vs.** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **MARATHON CHEESE CORPORATION**, *a Wisconsin corporation* and JOHN AND JANE DOES I-X, whose true identities are unknown. | |
| *Defendants.* | |

COMES NOW the Plaintiff, by and through her counsel of record, and for causes of action against Defendants alleges as follows:

### JURISDICTION

1.      This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332 because Plaintiff asserts claims arise under 42 U.S.C. Chapter 126 §12101, et. seq. 28 U.S.C. Chapter 28 §1332 and with respect to which this Court has jurisdiction authorized by 28 U.S.C. § 1343(a)(3) or by virtue of federal question jurisdiction statute 28 U.S.C. §1331.

2.　　　　The amount in controversy exceeds $75,000.

3.　　　　This Court has supplemental jurisdiction over any state law claims because Plaintiff's claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

4.　　　　Idaho and the U. S. Equal Employment Opportunity Commission have entered into a work-sharing agreement.

5.　　　　Plaintiff filed a Charge of Discrimination with respect to the acts alleged in this complaint with both the Idaho Human Rights Commission and the U. S. Equal Employment Opportunity Commission.

6.　　　　All pertinent administrative procedures have been complied with by the Plaintiff with respect to the Idaho Human Rights Act.

7.　　　　Idaho Human Rights Commission found probable cause that Defendant Marathon Cheese Corporation illegally discriminated against Plaintiff.

8.　　　　Plaintiff has received a Notice of Right to Sue from the Idaho Human Rights Commission.

9.　　　　Upon information and belief, all pertinent administrative procedures of the U. S. Equal Employment Opportunity Commission have been complied with by the Plaintiff with respect to her claim of illegal discrimination by Defendant Marathon Cheese under the Americans With Disabilities Act.

10.　　　　However, as of the date of the filing of this complaint Plaintiff has not received a Notice of Right to Sue from the U. S. Equal Employment Opportunity Commission., and despite the fact that the Plaintiff has not received a Notice of Right to Sue from the U. S. Equal Employment

Opportunity Commission, it either has issued a Notice of Right to Sue or will issue one in the near future.

11.      To the extent that Plaintiff cannot bring a claim under the Americans With Disabilities Act before a Notice of Right to Sue has been issued by the United States Equal Employment Opportunity Commission, this complaint should be construed not to specifically allege a cause of action under the Americans With Disabilities Act but simply (1) to give notice that the Charge of Discrimination which Plaintiff filed under that act has been resolved in her favor, and (2) that Plaintiff will move to amend this complaint to include an express claim under the Americans With Disabilities Act upon receipt of a notice of right to sue from the EEOC.

## VENUE

12.      Venue is proper in the Western Division of the District of Idaho because at least one of the Defendants "resides" within Ada County, 28 U.S.C. 1391 (a) and (c). All of the Defendants are subject to personal jurisdiction in Idaho.  28 U.S.C. 1391 (a).

## PARTIES

13.      Plaintiff, Alice Kipp ("Plaintiff") was, at all relevant times herein, a resident of Mountain Home, Elmore County, Idaho.

14.      Upon information and belief, Defendant Marathon Cheese Corporation ("Marathon Cheese") is a Wisconsin corporation which maintains a business address of 304 East Street Marathon, WI 54448-0185 and whose registered agent for service of process with the Idaho Secretary of State is Jay Phillips 3000 NW Marathon Way, Mountain Home, Idaho 83647.

15.        At all relevant times herein, Defendant Marathon Cheese conducted business in Elmore County, Idaho.

16.        Defendants John/Jane Does I through X, whose true identities are presently unknown, are entities or individuals who were the agents, employees, independent contractors, subdivisions, or divisions of Defendants herein, or are entities or individuals acting on behalf of, or in concert with Defendant Marathon Cheese with respect to the acts and omissions alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Background

17.        Plaintiff Kipp applied for a job with Defendant Marathon Cheese, a Cheese packaging company, based upon her understanding of Defendant Marathon Cheese's rate of pay and employment benefits.

18.        Plaintiff Kipp began working for Defendant Marathon Cheese on or about March 2, 2015 as a production line worker in Defendant Marathon Cheese's Mountain Home, Idaho plant.

19.        In that capacity, Plaintiff Kipp was packing Cheese in boxes on an assembly line.

20.        Plaintiff Kipp intended to work for Defendant Marathon Cheese until she retired.

21.        On or about August 5, 2015, Plaintiff Kipp suffered an injury to her right wrist while performing her duties as a production line worker at Defendant Marathon Cheese.

22.     Prior to Plaintiff Kipp's August 5, 2015 on the job injury at Marathon Cheese did not have any medically imposed lifting restrictions.

23.     Prior to Plaintiff Kipp's August 5, 2015 on the job injury at Marathon Cheese did not have any limitations or restrictions that interfered with her ability to perform the essential functions of her job at Marathon Cheese.

24.     Prior to Plaintiff Kipp's August 5, 2015 on the job injury at Marathon Cheese she was able to perform the essential functions of her job without the need for an accommodation.

**Initial Work Accommodation**

25.     Following Plaintiff Kipp's August 5, 2015 industrial accident, Plaintiff Kipp gave Plaintiff timely notice to Defendant Marathon Cheese and then filed the necessary documents with the Idaho Industrial Commission initiating her Worker's Compensation claim under the Idaho Worker's Compensation Act.

26.     Exercising its power to do so under Idaho's Worker's Compensation Law, Defendant Marathon Cheese directed and controlled the medical care that Plaintiff Kipp received in treatment of the injuries sustained in her on-the-job accident suffered on August 5, 2015.

27.     Plaintiff Kipp was seen at St. Luke's Elmore Occupational Health, where she was diagnosed with right wrist tenosynovitis and a torn tendon, given a prescription and splint, and was referred to physical therapy.

28.     Shortly after Plaintiff Kipp's August 5, 2015 on the job injury at Marathon Cheese, she purchased and began using a wrist brace for each wrist; one to allow her to work with her injured right wrist, and the other to prevent injury to her left wrist.

29.     Plaintiff Kipp was placed on temporary lifting restrictions as a result of her August 5, 2015 on the job injury sustained at Marathon Cheese.

30.     To accommodate Plaintiff, and to allow her to perform the essential functions of her job, Defendant Marathon Cheese allowed her to use these wrist braces while working.

31.     During the period of treatment for her work-related injury, Defendant Marathon Cheese provided Plaintiff Kipp with modified work duties in accordance with the medical restrictions given by her treating medical providers.

32.     Defendant Marathon Cheese's Mountain Home plant runs approximately seven of its eleven production lines during the third shift, which was the shift Plaintiff Kipp worked.

33.     Following her injury, Plaintiff Kipp was able to do a majority of the positions on all other production lines while wearing a wrist brace.

34.     Prior to her injury, Plaintiff Kipp primarily worked on lines A-2 and D-4.

35.     From approximately August 30, 2015 until June 3, 2016, Plaintiff Kipp worked under the temporary medical restrictions given to her by physicians selected and employed by Defendant Marathon Cheese and its insurance company.

36.     Following her industrial accident Defendant Marathon Cheese temporarily provided an accommodation under the Americans With Disabilities Act to allow Plaintiff Kipp to perform the essential functions of her job.

37.     Defendant Marathon Cheese accommodated Plaintiff Kipp by allowing her to primarily work lines A-3 and D-4 as opposed to lines A-two and de-for which she had worked prior to her August 5, 2015 industrial accident.

38.     With this accommodation and the accommodations identified in ¶29 above and the attached Determination of the Idaho Human Rights Commission, Plaintiff was able to do perform all of the essential functions of her job on all of the positions on lines A-3 and D-4.

39.     Allowing Plaintiff Kipp to work on A-3 and D-4 until she had reached maximum medical stability from her industrial injury of August 5, 2015 was a reasonable accommodation under the Americans With Disabilities Act.

40.     Following her industrial injury and prior to her termination, during a period of over nine months, Plaintiff Kipp received two raises and two bonuses, all while working within her medical restrictions.

**Defendant Marathon Cheese's Closure of Plaintiff's Worker's Compensation Case and Termination of Her Employment**

41.     On or about January 25, 2016, permanent medical restrictions were given to Plaintiff Kipp by physicians selected and employed by Defendant Marathon Cheese and its insurance company.

42.     On or about June 6, 2016, Plaintiff Kipp's workers' compensation claim was "closed" by the health care providers selected and employed by Defendant Marathon Cheese and its insurance company.

43.     The reason given by Defendant Marathon Cheese and its representatives for "closing" her worker's compensation claim was its claim that Plaintiff Kipp's post-injury permanent restrictions were the result of pre-existing conditions.

44.     In fact, Plaintiff Kipp's post-injury permanent restrictions were the result of the injury that she sustained on the job while working for Defendant Marathon Cheese on August 5, 2015.

45.     In the Alternative, Plaintiff Kipp's post-injury permanent restrictions were the result of the aggravation of physical conditions occurring at the time of the accident that she suffered on the job while working for Defendant Marathon Cheese on August 5, 2015.

46.     Defendant Marathon Cheese knew, or in the exercise of reasonable care should have known, that the permanent restrictions that Plaintiff Kipp was placed under following her reaching maximum medical improvement from her August 5, 2015 on-the-job injury were the result of that injury.

47.     Upon information and belief, Defendant Marathon Cheese and/or its surety, selected physicians upon whom it can rely to attribute injury resultant restrictions to pre-existing conditions whenever possible.

48.     The selection of physicians upon whom Defendant Marathon Cheese and its surety could rely to attribute injury resultant restrictions to pre-existing conditions was an act of bad faith.

49.     Following her industrial injury and prior to her termination, during a period of over nine months, Plaintiff Kipp received two raises and two bonuses, all while working within her medical restrictions.

50.     Despite the fact that Plaintiff Kipp was able to perform the essential functions of her job with the accommodations already made by Defendant Marathon Cheese, on or about June 7, 2016, Plaintiff Kipp was contacted by Kris Williamson, a Human Resources Department representative for Defendant Marathon Cheese and was told that her employment with Defendant Marathon Cheese had been terminated.

51.     Plaintiff Kipp was informed by Defendant Marathon Cheese that her termination was due to her permanent medical restrictions for a non-work-related injury.

52.     Defendant Marathon Cheese is explanation of the reasons for termination was a pretext intended to cover up its unwillingness to extend the accommodations that had allowed Plaintiff Kipp to perform the essential functions of her job.

### Plaintiff Kipp's Request for Continuation of Reasonable Accommodation Under the Americans with Disabilities Act

53.     On or about June 15, 2016, Plaintiff Kipp's agent sent a letter to Kris Williamson at the Marathon Cheese Mountain Home location in which he requested that Defendant Marathon Cheese provide Plaintiff Kipp with a reasonable accommodation based upon her disability.  A copy of that letter is attached hereto as Exhibit A.

54.     Plaintiff Kipp's agent's letter to Defendant Marathon Cheese noted that the accommodations that have been provided to Plaintiff allowed her to perform her job, that there was no evidence that she had active osteoarthritis interfering with her ability to work prior to August 5, 2015, and that the accommodation requested by Plaintiff in Exhibit A was that the termination of employment be rescinded, that she be advised when he returned to work, simply to allow her to continue to work under the conditions of employment that it existed subsequent to her August 5, 2015 industrial injury.

55.     On or about June 22, 2016, counsel for Defendant Marathon Cheese sent a letter to counsel for Plaintiff Kipp in which he stated that "Marathon Cheese does not intend to rescind its termination of Plaintiff Kipp."  A copy of that letter is attached hereto as Exhibit B.

### Exhaustion of Administrative Remedies under the Idaho Human Rights Act and the Americans with Disabilities Act

56.     Plaintiff filed a Charge of Discrimination with the Idaho Human Rights Commission (hereinafter "IHRC") on or about June 29, 2016.

57.     The Plaintiff filed a complaint with the Equal Employment Opportunity Commission (hereinafter "EEOC") on the same day.

58.     The IHRC conducted an investigation of Plaintiff's claims, and of Defendant Marathon Cheese's response.

59.     On or about February 23, 2018, the IHRC issued its investigative report in which it found probable cause that Defendant Marathon Cheese had illegally discriminated against Plaintiff Kipp in violation of the Americans with Disabilities Act.  A copy of that Determination is attached hereto as Exhibit C.

60.     Plaintiff has complied with all administrative procedures prerequisite to filing a Complaint pursuant to Americans with Disabilities Act and the Idaho Human Rights Act.

61.     Plaintiff has received a Notice of Right to Sue from the Idaho Human Rights Commission. A copy of that Notice of Right to Sue is attached hereto as Exhibit D.

62.     Plaintiff has received a Notice of Right to Sue from the United States Equal Opportunity Commission. A copy of that Notice of Right to Sue is attached hereto as Exhibit E.

**Damages**

63.     Plaintiff Kipp is 61 years old and, following her termination, sent out dozens of resumes and applications and has had difficulty finding another full-time job with medical, dental and vision benefits.

64.     As a direct and proximate result of the Defendant's wrongful acts Plaintiff Kipp has sustained a loss of past and future income and other economic damages in amounts to be proven at trial.

65.     The sudden and unexpected loss of the labor market has had a significant emotional impact on Plaintiff Kipp.

**Compliance with Notice Pleading Requirements**

66.     Although not required by I.R.C.P. 8(a) to provide anything but a "short and plain statement of the claim showing that the pleader is entitled to relief" in a Complaint, Plaintiff gives notice to all Defendants that Plaintiff alleges causes of action sounding in negligence, vicarious liability, discriminatory retaliation, and violations of the Americans with Disabilities Act, and allege that all elements exist for each such cause of action.

67.     In addition to the foregoing causes of action, specified for the convenience of the Court and defense counsel, Plaintiff hereby intends by this pleading to give notice that she may have additional claims against the Defendants arising from currently unknown facts of which the Defendants are aware relevant to acts and/or omissions of its employees, agents, and/or representatives.

68.     The facts as set forth are not intended to limit any theory of recovery, since the limited facts pleaded herein are based upon information presently known to the Plaintiff and are intended to comply with Federal Rule of Civil Procedure 8(a)(2)'s requirement that this pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

69.     Plaintiff intends to pursue all causes of action, including conspiracy to commit a tort, as may be applicable to the facts developed in discovery or otherwise in this case.

70.     Plaintiff alleges that evidence exists of all elements of each cause of action pleaded herein.

71.     The conduct of Defendants was intentional, willful, wanton, reckless, and/or grossly negligent.

72.     To the extent that any cause of action applicable to the facts of this case or remedy sought by the Plaintiff requires the pleading of any other aggravated state of mind or conduct, Defendants are on notice that Plaintiff hereby includes each such allegations.

73.     All of the foregoing and following allegations are alleged against John Does I through X whose true identities are unknown.

**FIRST CAUSE OF ACTION**
**<u>Violation of Civil Rights</u>**

74.     Plaintiff Kipp realleges all of the foregoing allegations as though fully set forth in haec verba.

75.     Plaintiff Kipp was an "employee" of Defendant Marathon Cheese as defined by Americans with Disabilities Act, 42 U.S.C. § 12111(4) and The Idaho Human Rights Act (I.C. §67-5901, *et seq*.

76.     Defendant Marathon Cheese was Plaintiff Kipp's "employer" as defined by 42 U.S.C. § 12111(5).

77.     At all relevant times herein, Plaintiff Kipp had a record of having sustained an injury on or about August 5, 2015 resulting in a physical impairment resulting from an injury to her right wrist that substantially limits one or more of her major life activities.

78.     At all relevant times herein, Plaintiff Kipp's physical impairment was a "disability" within the meaning of the definitions of the Americans with Disabilities Act, 42 U.S.C. § 12102(1) and The Idaho Human Rights Act (I.C. §67-5901, *et seq.*

79.     At all relevant times herein, Plaintiff Kipp was regarded by Defendant Marathon Cheese as having a "disability" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102(1) and The Idaho Human Rights Act (I.C. §67-5901, *et seq.*

80.     Plaintiff Kipp's physical restrictions constitute a "disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12001, et seq.) in that it is "a physical or mental impairment that substantially limits one or more of the major life activities…" 42 U.S.C. § 12102(2)(a).

81.     Notwithstanding Plaintiff Kipp's impairment, at all relevant times, Plaintiff Kipp was a "qualified individual with a disability" as defined by The Americans with Disabilities Act (42 U.S.C. §12101, et seq.) who was able to perform the essential functions of her job at Marathon Cheese.

82.     Plaintiff Kipp was terminated by Defendant Marathon Cheese because of her disability.

83.     Plaintiff Kipp's disability could have been accommodated by continuing to allow her to perform the same job that she performed following her injury in August 2015 until her termination on June 6, 2016.

84.     Plaintiff Kipp was terminated by Defendant Marathon Cheese, because it did not want to make a reasonable accommodation or enter into and/or continue in a good-faith dialogue about what accommodation might be appropriate.

85.     Upon information and belief, Plaintiff Kipp further asserts that Defendant Marathon Cheese terminated her, because Defendant Marathon Cheese did not want to or was unwilling to make a "reasonable accommodation" (as defined by 42 USC § 12111(9)) to permit her to continue to perform the essential functions of her job.

86.    Plaintiff Kipp filed a Charge of Discrimination with the U. S. Equal Employment Opportunity Commission and the Idaho Human Rights Commission based on the foregoing facts.

87.    After the completion of an investigation conducted by the Idaho Human Rights Commission on behalf of the U. S. Equal Employment Opportunity Commission a "Determination" was issued finding "probable cause to believe that illegal discrimination has occurred" on the part of Defendant Marathon Cheese against Plaintiff Kipp in that Defendant Marathon Cheese "failed to enter into the interactive process in order to seek an accommodation for complainant's disability and instead discharge complainant" and that "good cause for disability discrimination has been shown."

88.    Plaintiff Kipp sustained damages as a direct and proximate result of that discrimination as described above.

89.    Defendant Marathon Cheese, through its agents or supervisors, engaged in a pattern and practice of unlawful disability discrimination by resulting in the termination of Plaintiff Kipp for her disability or, alternatively, because it regarded Plaintiff Kipp as disabled in violation of the Idaho Human Rights Act contained in I.C. §67-5901, et seq.

90.    Defendant Marathon Cheese, at all times relevant hereto, had actual or constructive knowledge of the conduct of the agents that discriminated against Plaintiff Kipp.

91.    Defendant Marathon Cheese violated the Idaho Human Rights Act by making an employment decision to terminate based, at least in part, on Plaintiff Kipp's disability, or, alternatively, because they regarded Plaintiff Kipp as disabled.

92.    Plaintiff Kipp's physical disability was a substantial factor in Defendant Marathon Cheese's decision to terminate.

93.     Defendant Marathon Cheese failed to comply with its duty to take all reasonable and necessary steps to eliminate disability discrimination from the workplace and to prevent it from occurring in the future.

94.     Plaintiff Kipp is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants, and each of them, have engaged in other discriminatory practices against her which are not yet fully known.  Any such additional conduct is incorporated herein by reference to the extent that evidence of it exists in the Defendant's records.

95.     As a further direct and proximate result of Defendants' violation of the Idaho Human Rights Act, as heretofore described, Plaintiff Kipp has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff Kipp.  Plaintiff Kipp requests that costs and attorneys' fees be awarded to her.

96.     Plaintiff Kipp sustained damages as a direct and proximate result of that discrimination as described above.

97.     As a direct and proximate result of the acts and omissions of Defendants, by and through their agents and/or representatives, Plaintiff Kipp has also sustained damages as stated in the prayer for relief below.

## SECOND CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

98.     Plaintiff realleges all of the foregoing allegations as though fully set forth in haec verba.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

99.     In engaging in the conduct referenced herein, Defendants engaged in outrageous conduct not reasonably cognizable under the standards of decent society.

100.    In engaging the conduct referenced in the preceding paragraphs, Defendants caused Plaintiff to suffer severe emotional distress.

101.    Through the outrageous conduct described above, Defendants, and each of them, acted with the intent to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress.

102.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and will continue to suffer in the future, pain and suffering and extreme and severe mental anguish and emotional distress.  Plaintiff is thereby entitled to general and special, compensatory damages in amounts to be proven at trial.

103.    Defendants' conduct, as described herein, was outrageous, malicious and oppressive and done with a conscious disregard of Plaintiff's rights.  The acts and omissions of Defendants were performed with the knowledge of their superior bargaining and economic power and dominion over Plaintiff.

104.    The conduct of the Defendants, as aforesaid, was intentional, reckless, malicious, outrageous, or otherwise of a character and quality to give rise to a cause of action for the intentional infliction of emotional distress under Idaho law.

105.    Plaintiff suffered severe emotional distress as a result of the conduct of the Defendants.

106.    Plaintiff has sustained damages aforesaid.

### THIRD CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

107.     Plaintiff realleges all of the foregoing allegations as though fully set forth in haec verba.

108.     The conduct of the Defendants, as aforesaid, was negligent and gives rise to a cause of action for the negligent infliction of emotional distress under Idaho law.

109.     Plaintiff suffered emotional distress accompanied by physical injury as a result of the conduct of the Defendants.

110.     Plaintiff has sustained damages aforesaid.

### FOURTH CAUSE OF ACTION
### Intentional Interference with Prospective Economic Advantage

111.     Plaintiff realleges all of the foregoing allegations as though fully set forth in haec verba.

112.     Plaintiff had a reasonable expectation of continued employment with the Defendant employer and a valid economic expectancy of doing so and of working in the field.

113.     Defendants had knowledge of the expectancy.

114.     Defendants intentionally interfered inducing termination of the expectancy.

115.     Plaintiff had a reasonable expectation of being able to continue to work in her field.

116.     Defendants had an improper objective or purpose to harm the Plaintiff.

117.     Defendants used a wrongful means to cause injury to the prospective business relationship.

118.     Defendants had an improper objective or purpose to harm the Plaintiff.

119.     As a direct and proximate result of Defendants' use of wrongful means to cause injury to Plaintiff's prospective business relationship, Plaintiff suffered damages as aforesaid.

120. The injury sustained by the Plaintiff was wrongful by some measure beyond the fact of the interference itself.

121. Plaintiff was injured as aforesaid and by losing her prospective economic advantage.

**WHEREFORE, Plaintiff prays judgment against Defendants as follows:**

1. Damages in the amount of $1,250,000 or such greater amount as may be proven at trial.

2. Special damages, stemming from past and future lost income and benefits, in an amount to be proven at trial.

3. General damages for pain and suffering, emotional distress, and improperly imposed and undue hardship in an amount that may be proven at trial.

4. For Plaintiff's reasonable costs and attorneys' fees incurred herein.

5. For such other and further relief as is equitable in the premises.

Dated June 1, 2018.

SEINIGER LAW
Wm. Breck Seiniger, Jr.
Attorneys for Plaintiff

# SEINIGER | LAW

**Wᴹ Breck Seiniger, J.D.,** *Attorney Licensed in Idaho, Oregon, Washington, and The District of Columbia*
**Cheyenne M. House, J.D.,** *Associate Attorney*
**Cade Woolstenhulme, M.S.W.,** *Supervising Paralegal*
**Eileen Johnson, J.D., M.P.A.,** *Associate Attorney*
**Harmony R. Wright,** *Office Manager*



June 15, 2016

Kris Williamson
Marathon Cheese Corp.
3000 Marathon Way
Mountain Home, Idaho 83647

Re:    Our client/Employee:       Alice Louise Kipp
       Date of accident:          August 5, 2015
       Request for Accommodation under the Americans with Disabilities Act

Dear Ms. Williamson:

I represent your employee, Alice Louise Kipp.  As I believe you are aware, Alice Louise Kipp sustained an injury while in at work for Marathon Cheese Corp..  On 8/5/15 she suffered a Right wrist tenosynovitis, strain and partial tear of the flexor carpi tendon and aggravation of previously asymptomatic pisotriquetral osteoarthritis.  As a result of this injury, she suffers from a disability covered by the Americans with Disabilities Act.  Due to her disability, she needs a reasonable accommodation.  The purpose of this letter is to initiate a good faith dialogue for purposes of arriving at a reasonable accommodation, as required by the ADA and the federal Equal Employment Opportunity Commission (EEOC).  It is my understanding that my client has a lifting restriction that the employer has been accommodating by transferring her to a lighter line.  On that line she was required to lift between ten to twelve pounds and never more than twenty.  I have also been provided with a form that would appear to be a representation of the requirement of Ms. Kipp's job at the time of her August 5, 2015 industrial accident.  This document was apparently prepared by Marathon employee Paul Zoromski.  I have enclosed a copy of that form.  This form does not represent the requirements of the job that Ms. Kipp has been performing for the better part of a year since returning to work from her injury of August 5, 2015.  There is no reason that she cannot continue to perform that job, which is regularly available, other than the fact that she has recently been terminated.  However, she is willing and able to return to work.

My understanding is that until recently, Marathon Cheese Corp. was accommodating Alice Louise Kipp, but upon receipt of a letter from her treating physician, Dr. Lamey, stating that her ongoing condition causing her disability was not a result of her occupational injury, she was terminated because she "could not perform her job."  Apparently, Dr. Lamey is of the opinion that Alice Louise Kipp's osteoarthritis was pre-existing.  Be that as it may, there is no evidence that her osteoarthritis was active in the sense of producing her present symptoms or interfering with her ability to work.  It would appear that this condition was aggravated by her

EXHIBIT A

occupational injury.  As such, it is compensable under Idaho's Workers Compensation Act.  In any case, it is a condition requiring a reasonable accommodation.  Please consider this to be a demand that her termination from employment be rescinded and that I be advised of the date upon which you require her to return to work.

It is also my understanding that Alice Louise Kipp has disability insurance available to her.  My understanding is that she may be eligible for both long and short term disability benefits.  Enclosed herewith please find Alice Louise Kipp's executed claim form.  I am not sure whether Ms. Kipp is even eligible for disability insurance, since she can do her job with an accommodation.  Nevertheless, please provide me with any other forms required to complete the necessary applications for both short and long term disability benefits.

I look forward to your prompt reply.  Thank you.

Cordially,

Wᵐ Breck Seiniger, Jr.


# Lowenbaum
# Law

Christopher M. Sanders
**314.746.4809**
csanders@lowenbaumlaw.com

222 South Central Avenue, Suite 900
St. Louis, MO 63105
*Phone* 314.863.0092 *Fax* 314.746.4848

June 22, 2016

*VIA EMAIL (WBS@SeinigerLaw.com)*
*and REGULAR U.S. MAIL*

Wm. Breck Seiniger, Jr., Esq.
Seiniger Law
942 W. Myrtle Street
Boise, ID 83702

      Re:    *Alice Louise Kipp*
                <u>Our File No. MCH-0009</u>

Dear Mr. Seiniger:

      Please be advised that the undersigned and Lowenbaum Law represent Marathon Cheese Company with respect to its labor and employment matters. In the future, please direct all correspondence related to Ms. Kipp's termination to my attention. Marathon has forwarded me your June 9 and 15, 2016 letters regarding Ms. Kipp's termination, request for accommodation, and application for short-term disability benefits. I attempted to contact you by last week and left a message with a member of you administrative staff. <mark>Marathon Cheese does not intend to rescind its termination of Ms. Kipp.</mark> If you would like to discuss this matter further, please contact me at your convenience.

      Additionally, Marathon Cheese is in receipt of some of the application documents necessary to process Ms. Kipp's claim for short-term disability benefits. Marathon Cheese, however, has not received a completed UMR Attending Physician Statement from Ms. Kipp. Enclosed is a blank copy of a UMR Attending Physician Statement which Ms. Kipp needs to have completed by her healthcare provider. Please have Ms. Kipp's healthcare provider complete the enclosed document and return it to Kris Williamson at Marathon Cheese so that Ms. Kipp's claim for short-term disability benefits can be processed.

      If you should have any questions, please do not hesitate to contact me.

                          Very truly yours,

                          Christopher M. Sanders

CMS/kds
Enclosure

**EXHIBIT B**

## BEFORE THE IDAHO HUMAN RIGHTS COMMISSION

**Alice Kipp,** Complainant

vs.

Marathon Cheese Corporation, Respondent
Mountain Home, Idaho

Case No(s).: 38C-2016-00405
AD-0716-001

Basis:  Disability

Issue(s): Reasonable Accommodation,
Discharge

INVESTIGATOR'S REPORT AND
COMMISSION DETERMINATION

---

### SUMMARY OF INVESTIGATION

#### A.  Complainant's Position & Evidence

Beginning March 2, 2015, Complainant worked as a line worker for Respondent, a cheese production plant.  On August 25, 2015, Complainant tore a tendon in her arm and developed "mild osteoarthritis" in her right wrist.  Complainant's medical provider placed her on a ten-pound lifting restriction, which Respondent accommodated.

On June 6, 2016, Kris Williamson, human resources, told Complainant that she was being put on Family Medical Leave Act (FMLA) leave and "short term disability" until Complainant's medical provider released her from the ten-pound lifting restriction. Later that day, Ms. Williamson told Complainant that Respondent was terminating her (Complainant) for medical reasons.

Complainant argues that Respondent failed to enter into the interactive process to accommodate her disability.  Complainant states,

> There are 4 to 7 lines that run on the night shift Monday through Friday, depending on the orders.  There are approximately 100 employees on the night shift.  Approximately 63 or those are line workers.  The rest are machine operators, cheese issuers, supervisors, quality assurance, sanitation, fork lift drivers, maintenance, and material handlers. [Respondent] does not have to [create] "light duty positions."  Of the 63 positions, approximately 50 are light duty, defined by picking up 10 lbs. or less, (sic) or not at all.

Complainant notes that she performed the work on positions on all of three lines, all but one position on another, and on eight of seventeen, six of eight, and 4 of 8 on three others,

EXHIBIT C

respectively.   Complainant also performed clean up and "re-work" on all of these lines. Complainant contends that she was able to perform 74% of all the work required of a line worker.

### B.   Respondent's Position & Evidence

Respondent argues that all line workers are required to lift up to forty-five pounds.   After Complainant's injury in August, 2015, Respondent acknowledges that Complainant was put on light duty work with a ten pound lifting restriction per its policy for employees who are on "temporary medical restrictions."   Respondent states that it does not "create light duty positions for individuals who have permanent medical restrictions."   On May 20, 2016, Respondent learned that Complainant's lifting restrictions were permanent.   Respondent acknowledges that Ms. Williamson notified Complainant that she would be put on leave, but notes that this was an error because Respondent determined that Complainant could not perform the majority of positions on the production line. As a result, Respondent terminated Complainant because it considered Complainant was not able to perform the essential functions of her job. [1]

Respondent argues that workers on the production line are rotated frequently to protect workers from developing repetitive motion injuries.   Respondent claims that workers rotate positions every fifteen minutes.   Line workers, in various positions, are required to lift 20 to 40 pounds, and frequently lift up to 10 pounds.   Thus, Respondent contends that Complainant was not able, as she states, to work "74%" of the line positions. Respondent did indicate that not every worker rotates through every position in a given shift, but that there are no workers who work permanently in any given line position.

### C.   Other evidence Considered

Complainant contends that workers work primarily on a few production lines routinely.   In her own time at Respondent, Complainant said she worked on 3 lines exclusively and that workers are assigned a line to work at the beginning of a shift for the entire shift.

Robert Kipp worked as a maintenance worker for Respondent.   Complainant provided a deposition from Mr. Kipp on October 10, 2017, and this investigator interviewed him on October 20, 2017.   Mr. Kipp noted that various positions on the lines he maintained required different skill levels, and workers were not routinely placed in different positions randomly.   Experienced and knowledgeable workers "pretty much stayed on one line or two lines." To do otherwise, "could cause maintenance problems."   Although seasoned employees could work all lines, Mr. Kipp observed them to work on one or two, "sometimes three" lines exclusively with very few exceptions. [2]

---

[1] Respondent indicates that Complainant did not disclose that she had arthritis on her "post-employment medical exam process," which can be cause for discharging an employee. However, that matter is not considered, here, as Respondent contends Complainant was discharged for not being able to perform the essential functions of her job.
[2] Complainant listed other witnesses, but this investigator was unable to contact them.

Alice L Kipp vs. Marathon Cheese Corporation - 2

EXHIBIT C

## D. Discussion and Analysis of Evidence

Complainant contends that she was denied a reasonable accommodation for her permanent disability and was discharged instead.

To state a claim for disability discrimination, Complainant must be a qualified individual with a disability, which means an individual with a disability who is able to perform the essential functions of the job with or without reasonable accommodation.

If an employee has a disability, an employer must make reasonable accommodations to the known physical or mental limitations resulting from that disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business.  Undue hardship means an action requiring significant difficulty or expense, when considered in light of the nature and cost of the accommodation, the financial resources of the business, the impact of the accommodation on the operation of the business, and the nature of the business.

The record shows that Complainant is a person with a disability (osteoarthritis). Respondent discharged complainant because Complainant had a permanent ten pound lifting restriction which, in Respondent's view, prevented Complainant from performing the essential function of her job. Respondent states that it does not create positions for employees with permanent disabilities.  (Note: Respondent is cautioned to not rely on a blanket policy regarding employees with disabilities.)

The record shows that it was far from forgone how many of Complainant's duties were beyond her restrictions.  It is beyond the scope of this determination to evaluate Respondent's industrial processes, but the question of which jobs Complainant could do and how many of them is not answered here.  Rather, Respondent, upon discovering that Complainant had a permanent disability, discharged her. Although she had been working at light duty up to the point of her discharge, Respondent did not evaluate Complainant's ability to perform the job, but made an immediate decision to discharge her based solely on the fact that her restrictions were permanent. Respondent argues that its policies about rotating positions on the various lines to prevent repetitive motion injuries meant that Complainant had to be able to lift up to 45 pounds. However, it is far from established that the actual practice performed on the various lines was outside the scope of Complainant's abilities. To determine such requires the interactive process, which Respondent did not explore.

Respondent has failed to enter into the interactive process in order to seek an accommodation for Complainant's disability and instead discharged Complainant.  Good cause for disability discrimination has been shown.

EXHIBIT C

## COMMISSION DETERMINATION AND ORDER OF DISMISSAL

Given this evidence, the Commission finds probable cause to believe that illegal discrimination has occurred.  A staff member will be in contact with the parties to attempt resolution of the probable cause finding.


___2 | 23 | 18___
Date

_Benjamin Earwicker_, PhD, Administrator
On behalf of the Commission

rr


## DETERMINACIÓN DE LA COMISIÓN Y ORDEN DE DESPIDO

Dado esta evidencia, la Comisión acierta **causa probable** en creer que discriminación ilícita ha ocurrido. Un/a miembro/a del equipo estará en contacto con ambos grupos para intentar resolución del descubrimiento de causa probable.

EXHIBIT C

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of February 2018, I caused a true and correct copy of the foregoing document to be served as follows:

Cheyenne House
Seiniger Law
942 Myrtle Street
Boise, ID  83702

[X]  U.S. Mail
[  ]  Hand Delivery
[  ]  Via Facsimile


Christopher M Sanders
Lowenbaum Law
222 South Central Avenue, Suite 900
St. Louis, MO 63105

[X]  U.S. Mail
[  ]  Hand Delivery
[  ]  Via Facsimile

Alice L Kipp vs. Marathon Cheese Corporation - 5

EXHIBIT C

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of February 2018, I caused a true and correct copy of the foregoing document to be served as follows:

Cheyenne House
Seiniger Law
942 Myrtle Street
Boise, ID  83702

[X] U.S. Mail
[  ] Hand Delivery
[  ] Via Facsimile

Christopher M Sanders
Lowenbaum Law
222 South Central Avenue, Suite 900
St. Louis, MO 63105

[X] U.S. Mail
[  ] Hand Delivery
[  ] Via Facsimile

Alice L Kipp vs. Marathon Cheese Corporation - 5                    EXHIBIT C



IDAHO HUMAN RIGHTS COMMISSION  317 W. Main St. Boise, ID 83735
t: 208.334.2873  f: 208.334.2664  w: humanrights.idaho.gov

## CASE DISMISSAL AND NOTICE OF RIGHT TO SUE

May 25, 2018

Alice L. Kipp
c/o Seiniger Law
942 Myrtle St.
Boise, ID 83702

RE:    Alice L. Kipp vs. Marathon Cheese Corporation
       Complaint Nos.:  AD-0716-001; 38C-2016-00405

Dear Ms. Kipp:

As you know, the Idaho Human Rights Commission found probable cause to believe that illegal discrimination occurred in the above-captioned case. To date we have been unable to find grounds for settlement acceptable to both parties

The Commission has decided not to file a lawsuit in this case. This decision should not be construed as a reflection upon the merits.

The Complainant has 90 days from issuance of this notice of dismissal to file a lawsuit in district court under the Human Rights Act. See Idaho Code 67-5908 (2).

Sincerely,

Benjamin J. Earwicker, PhD
Administrator

An Equal Opportunity Employer and Service Provider. Reasonable accommodations are available upon request. Dial 711 for TTY Idaho Relay Service.

EXHIBIT D

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Alice L. Kipp
c/o Seiniger Law
942 Myrtle Street
Boise, ID 83702

From: Seattle Field Office
909 First Avenue
Suite 400
Seattle, WA 98104-1061

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 38C-2016-00405 | Kristine A. Jensen,<br>State & Local Coordinator | (415) 522-3232 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Nancy Sienko*

6-1-18

Enclosures(s)

**Nancy A. Sienko,
Director**

(Date Mailed)

cc: **MARATHON CHEESE CORPORATION**
c/o Corey Franklin, Jackson Lewis PC
222 South Central Ave, Ste 900
Saint Louis, MO 63105

EXHIBIT E